FILED

2021 Dec-30  PM 01:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL SHINE, TONY ELLIS, and LEWIS THOMAS,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Case No. 2:18-CV-2093-CLM** |
| **THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA,** | ) ) ) ) | |
| **Defendant.** | ) ) | |

## MEMORANDUM OPINION

Lewis Thomas sued his former employer, The Board of Trustees of the University of Alabama ("UAB"), alleging race discrimination under Title VII, 42 U.S.C. § 2000e *et seq.*, and under 42 U.S.C. § 1981. UAB has moved for summary judgment (doc. 65) to strike Thomas's expert designation and report. (Doc. 76). For the reasons below, the Court **GRANTS** the motion for summary judgment and **DENIES AS MOOT** the motion to strike.

## FACTUAL AND PROCEDURAL BACKGROUND

The Court draws the facts from the summary-judgment record. At this stage, "[a]ll evidence and factual inferences are viewed in the light most favorable to the non-moving party, and all reasonable doubts about the facts are resolved in favor of the non-moving party." *Hardigree v. Lofton*, 992 F.3d 1216, 1223 (11th Cir. 2021).

## I.   Factual Background[1]

Lewis Thomas, an African-American man, began working for UAB in 1993. (Docs. 74 at 1 ¶ 1, 74-1 at 2). Since 2004, Thomas has been a "Network Technician – IV" in UAB's IT Department. (Docs. 67 at 3 ¶, 74 at 1 ¶ 1). Network technicians support the IT Department's engineers and analysts. (Doc. 66-12 at 3 ¶ 4). And, in his role, Thomas "programs network equipment, processes work orders[,] and completes assigned tasks from engineers and analysts." (*Id.*).

### A.   Promotions at UAB

Thomas's lawsuit centers on his allegation that UAB discriminatorily denied him four promotions/positions: Communication Analyst Manager in 2012 and 2016,

---

[1] For many facts, Thomas contends that the Court should disregard the testimony of UAB employees because they are "interested witnesses." (*See, e.g.*, Doc. 74 at 1–2 ¶ 3). But merely repeating this contention (eighteen times) does not dispute the facts asserted by UAB's witnesses. And the Court will not ignore their uncontroverted testimonies at the summary-judgment stage. *See, e.g.*, *Woods v. Delta Air Lines Inc.*, 595 F. App'x 874, 879 (11th Cir. 2014) ("[U]nder Rule 56, a party may support a motion for summary judgment with, among other things, affidavits or declarations, and there is no requirement that these sworn statements be from disinterested witnesses. Once the moving party does so, the nonmoving party bears the burden to produce evidence to dispute the facts averred in the sworn statement." (citations omitted)); *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 898 (5th Cir. 2002) ("The definition of an interested witness cannot be so broad as to require us to disregard testimony from a company's agents regarding the company's reasons for discharging an employee.").

Communication Engineer III in 2016, and Network Manager in 2019.

### 1. Communication Analyst Manager positions in 2012 and 2016

Thomas applied for the Communication Analyst Manager position in 2012. (Docs. 67 at 4 ¶ 9, 74 at 5 ¶ 9). But he didn't get an interview. (Docs. 67 at 5 ¶ 10, 74 at 5 ¶ 10). UAB gave the job instead to Mike Kiser, a white man who was already filling the role on an interim basis. (Docs. 67 at 4 ¶ 8, 74 at 5 ¶ 8). Thomas believes that he was more qualified than Kiser because he had served in a non-managerial communication-analyst role from 1997 to 2004 and performed duties such as "programming the telephone system, writing service orders, meeting with customers to populate new buildings, [and] data invoice." (Docs. 66-5 at 16–17, 67 at 5 ¶ 11, 74 at 5 ¶ 11).

Around 2016, the same position re-opened and Thomas applied. (Docs. 67 at 5 ¶ 10, 74 at 5 ¶ 10). This time around, UAB interviewed Thomas, Jennifer Dodson (a white woman who was filling the role in an interim basis), and Lori Williams (another white woman). (Docs. 66-15 at 3 ¶ 4, 67 at 5 ¶ 10, 74 at 5 ¶ 10). UAB selected Dodson. (Docs. 67 at 4 ¶ 9, 74 at 5 ¶ 9).

UAB says it selected Dodson because of her strong interview performance, prior work as an analyst and engineer, and her prior work supervising other analysts when she worked as a Coordinator of Telecommunication Services. (Docs. 66-15 at

3 ¶ 4, 67 at 6 ¶ 16). As for Thomas, UAB says that he had a poor interview performance (including, for example, that he failed to make eye contact with the interviewers), his lack of recent experience as an analyst (not since 2004), and his complete lack of engineer experience. (Docs. 66-15 at 3 ¶ 4, 67 at 6 ¶ 17).

In his deposition, Thomas said that the 2016 interview process was unfair and discriminatory for three reasons. First, he said that it was "odd" that Kathy Litzinger—the Executive Director of IT Business Operations—changed the interview process from "an interview with the supervisor of the area and one other person" to using an interview panel. (Doc. 66-5 at 20, 24). Second, he said that UAB used a discriminatory practice of putting unqualified people in an interim position and then later selecting them for the full-time position. (*Id.* at 14). And third, he says he was more qualified because he had trained Dodson. (*Id.* at 25). Thomas conceded, though, that he has no personal knowledge of Dodson's at-the-time job duties, educational background, or work experience before UAB. (*Id.* at 25–27).

### 2.    Communication Engineer III in 2016

Thomas also applied for an opening for a Communication Engineer III in 2016. (Docs. 67 at 8 ¶ 24, 74 at 9 ¶ 24). UAB interviewed Thomas, Otis Perkins (a white man who was working as a Communication Engineer II), and William Todd Weaver (another white man). (Doc. 66-15 at 4–5 ¶ 5). UAB selected Perkins. (Docs.

4

67 at 8 ¶ 25, 74 at 9 ¶ 25). And UAB says it selected Perkins because he was "the best qualified candidate and performed the best during the interview as compared to Weaver and Thomas." (Doc. 66-15 at 4–5 ¶ 5). Thomas again challenged UAB's use of a panel interview. (Doc. 66-5 at 23–24). And he says, after this rejection, that he became discouraged by his lack of success at obtaining a promotion. (*Id.* at 36).

### 3.    Data Center Network Manager in 2019

Thomas later applied for one other position: Data Center Network Manager position in 2019. (Docs. 67 at 8 ¶ 28, 74 at 11 ¶ 28). UAB interviewed Thomas for the position after he "followed up with HR why [he] never received an invite to . . . have an interview for the job." (Doc. 66-5 at 39). And during his deposition, Thomas identified two complaints about the interview process. First, Thomas felt that he "had to force their hand to even interview [him]." (*Id.* at 40). Second, Thomas objected to UAB inviting another technician (who worked under Thomas) to interview before asking him to interview. (*Id.* at 40–41).

It turns out that UAB never filled this position. (Doc. 66-12 at 4 ¶ 6). In his deposition, Thomas conceded that he didn't know whether UAB ever hired someone for the job. (Doc. 66-5 at 40).

### B.    Other allegations of misconduct

In his deposition, Thomas detailed several other allegations of misconduct by

UAB. First, he said that UAB discriminated against him by paying him less than it paid white employees whom he trained or whom he assisted at work. (Docs. 66-5 at 71–76, 67 at 9 ¶¶ 31–35, 74 at 12–13 ¶¶ 31–34). Second, he said that UAB mistreated him by unfairly evaluating him in his performance reviews. (Docs. 66-5 at 90–91, 67 at 10 ¶ 36, 74 at 13 ¶ 36). Although Thomas doesn't remember getting a negative performance review, Thomas said that he should have received even better reviews. (Doc. 66-5 at 91, 66-12 at 4 ¶ 7). And he said that this was discriminatory because "people of other races got better performance [reviews]." (Doc. 66-5 at 91).

Thomas also accused several UAB employees of misconduct. First, he said that Kathy Litzinger discriminated against him by failing to follow up with Thomas about his pay after saying that she would. (*Id.* at 80). Second, he said that Dodson would become "irate" with him and that it must stem from his race because "she ha[d] no other reason to be irate with [him]." (*Id.* at 31–32). But Thomas conceded that Dodson could have been angry with him for work-related reasons. (*Id.* at 32). Third, Thomas said that Jeff Mize (an assistant director in the IT Department) discriminated against him by asking him to accept a position in 2004 without a pay raise. (*Id.* at 66–69). Fourth, he said that Heather White (then-Chief Financial Officer) discriminated against him by failing to follow up with him about his pay. (Doc. 66-5 at 87). Fifth, he said that Bob Cloud discriminated against him based on

Cloud's involvement in the hiring in Kiser and Dodson, and based on Cloud's failure to help Thomas find promotional opportunities. (*Id.* at 95–97, 126). And sixth, he claimed that Willie Martin (a network technician) would yell at him and give him assignments that were not his responsibilities. (*Id.* at 45). But Thomas conceded that Martin would yell at white employees, too. (*Id.* at 47).

Lastly, Thomas said that Martin once unplugged Thomas's office phone line while Thomas was working from home, which prevented Thomas from working remotely. (*Id.* at 49). After Thomas complained, UAB investigated Martin and learned about Martin's negative communication habits. But UAB could not determine whether Martin unplugged Thomas's phone line. (Docs. 67 at 13–14 ¶¶ 53–54, 74 at 16 ¶¶ 53–54). And following the investigation, a superior met with Martin to address his abrasive communication style. (Doc. 66-12 at 4 ¶ 8).

## II.    Procedural Background

Thomas did not file his own discrimination charge with the Equal Employment Opportunity Commission. (Doc. 32 at 6 ¶ 10). Instead, he relies on the "earliest filed charge" of co-plaintiff Michael Shine, which Shine filed in May 2018. (*Id.*; Doc. 1-1).

Co-plaintiff Shine filed this lawsuit against UAB and Kathy Litzinger in December 2018. (Doc. 1). Thomas became a plaintiff in the third amended

complaint. (Doc. 32). The third amended complaint—the operative complaint—raises three claims. First, a Title VII disparate-treatment claim against UAB for race discrimination "with regards to promotions, pay[,] and other terms and conditions of employment." (Doc. 32 at 20). Second, a claim for race discrimination and retaliation under the Equal Protection Clause and 42 U.S.C. § 1983. (*Id.* at 21). And third, a Title VII disparate-impact claim against UAB. (*Id.* at 23). Thomas also appears to raise identical claims against UAB under 42 U.S.C. § 1981. (*Id.* at 2).[2] The Court has dismissed all claims against Litzinger. (Docs. 47, 62). So all that remains are the claims against UAB.

UAB filed a motion for summary judgment on Thomas's claims. (Docs. 65, 67, 77). Thomas opposes summary judgment. (Doc. 74). To support his opposition, Thomas produced an expert report with statistical evidence about pay and promotion in UAB's IT Department between 2014 and 2020. (Doc. 74-1). And UAB has moved to strike the expert report. (Doc. 76).

---

[2] Section 1981 does not provide for suits against state actors. *Bryant v. Jones*, 575 F.3d 1281, 1287 n.1 (11th Cir. 2009). The Court therefore dismisses Thomas's Section 1981 claims against UAB for lack of jurisdiction.

## STANDARD OF REVIEW

The Court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is material if its resolution "might affect the outcome of the suit." *Id.* To survive a "properly supported motion for summary judgment, [the nonmovant] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). "Conclusory allegations and speculation are insufficient to create a genuine issue of material fact." *Glasscox v. City of Argo*, 903 F.3d 1207, 1213 (11th Cir. 2018).

## DISCUSSION

In support of its motion for summary judgment, UAB briefed these claims: (1) promotion discrimination; (2) pay discrimination; (3) discrimination based on Thomas's performance reviews; (4) hostile work environment; and (5) disparate-impact discrimination. (Doc. 67). In his opposition, Thomas briefed only (1) promotion discrimination and (2) disparate-impact discrimination. (Doc. 74 at 20–24). So the Court finds that Thomas abandoned all claims except promotion

discrimination and disparate-impact discrimination.[3] The Court turns now to those two claims.

## I.     Disparate Treatment: Promotion Discrimination

In the third amended complaint, Thomas alleged that UAB treats white employees "better than African-Americans with regards to promotions." (Doc. 32 at 12 ¶ 39). And he alleged that white employees enjoyed "markedly better" career advancement. (*Id.* at 12 ¶ 40). Most of the factual bases for Thomas's promotion-discrimination claim are time barred. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). And Thomas cannot satisfy the *McDonnell-Douglas* framework or otherwise make a summary-judgment showing of intentional discrimination for the single basis that is not time barred. As a result, the Court grants summary judgment to UAB on Thomas's promotion-discrimination claim.

### A.     Governing Standards

For any Title VII disparate-impact claim, the plaintiff "has the burden of persuading the trier of fact that the defendant has committed intentional discrimination." *Lincoln v. Bd. of Regents of Univ. Sys. of Ga.*, 697 F.2d 928, 936

---

[3] The Eleventh Circuit has made clear that a party abandons grounds for relief by failing to address them in opposition to a defendant's well-supported motion for summary judgment. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); *Bulluck v. Newtek Small Bus. Fin., Inc.*, 808 F. App'x 698, 702 (11th Cir. 2020) (explaining that plaintiffs abandon claims "by failing to raise those arguments in response to [d]efendants' motions for summary judgment").

(11th Cir. 1983). The plaintiff "can do so in a variety of ways, one of which is by navigating the now-familiar three-part burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Lewis v. City of Union City*, 918 F.3d 1213, 1217 (11th Cir. 2019) (en banc). Other ways to satisfy this burden are to "present direct evidence of discriminatory intent, or demonstrate a 'convincing mosaic' of circumstantial evidence that warrants an inference of intentional discrimination." *Id.* at 1220 n.6 (citations omitted).

*McDonnell-Douglas* creates a three-part, burden shifting framework. In Step 1, the plaintiff must establish that: (1) "he or she belonged to a protected class"; (2) "he or she was qualified for and applied for a position that the employer was seeking to fill"; (3) "despite qualifications, he or she was rejected"; and (4) "the position was filled with an individual outside the protected class." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005). If the plaintiff makes that showing, then the burden shifts to the employer "to produce a legitimate, non-discriminatory reason for the alleged disparate treatment." *Hill v. Suntrust Bank*, 720 F. App'x 602, 605 (11th Cir. 2018). And if the employer does so, then the burden shifts back to the plaintiff to "show that the employer's proffered reasons are merely pretextual." *Id.*

Beyond *McDonnell Douglas*, the plaintiff can also survive summary judgment

by establishing "a 'convincing mosaic' of circumstantial evidence that warrants an inference of intentional discrimination." *Lewis*, 918 F.3d at 1220 n.6. And the plaintiff may make this showing with evidence of "(1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification was pretextual." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (on remand) (cleaned up).

One more thing: timeliness. The plaintiff "must exhaust administrative remedies before filing a complaint of discrimination under Title VII." *Stamper v. Duval Cnty. Sch. Bd.*, 863 F.3d 1336, 1339 (11th Cir. 2017). To comply with this mandatory (but not jurisdictional) claim-processing rule, Thomas must have filed a charge with the EEOC within 180 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1); *Stewart v. Jones Util. & Contracting Co.*, 806 F. App'x 738, 740 (11th Cir. 2020). The Supreme Court has explained that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113; *see also Stewart*, 806 F. App'x at 741 (relying on *Morgan*). And a "failure to promote" is a discrete act that "constitutes a separate actionable 'unlawful employment practice'" and that must fall within the filing period. *Morgan*, 536 U.S. at 114. Now to the merits.

**B.    The four promotion decisions**

Shine appears to rely on four of UAB's promotion decisions. The Court will address each decision in turn.

### 1.    2019 Data Center Network Manager

UAB contends that it never hired anyone for the Network Manager position in 2019. (Doc. 66-12 at 4 ¶ 6, 67 at 9 ¶ 30). Thomas conceded during his deposition that he didn't know whether UAB ever filled the position (doc. 66-5 at 40), and he hasn't argued otherwise in his summary-judgment opposition. As a result, Thomas cannot show that "the position was filled with an individual outside the protected class," and therefore cannot satisfy Step 1 of the *McDonnell-Douglas* framework. *See Vessels*, 408 F.3d at 768. Nor has Thomas explained how UAB's failure to promote him to a position that UAB didn't fill constitutes intentional discrimination. Nor has he detailed "a 'convincing mosaic'" of circumstantial evidence to permit an inference of intentional discrimination as for this position. *See Lewis*, 918 F.3d at 1220 n.6. So the 2019 position cannot get Thomas past summary judgment.

### 2.    2016 Communication Engineer III

UAB's failure to promote Thomas to Communication Engineer III in 2016 cannot get him past summary judgment because (1) it is time-barred and (2) Thomas has not provided enough evidence to allow a reasonable juror to find in his favor.

1. <u>Timeliness</u>: Thomas did not file this claim with the EEOC; he instead relies on co-plaintiff Michael Shine's May 2018 EEOC charge. (Doc. 32 at 6 ¶ 10; Doc. 1-1). The "single-filing" rule permits Thomas to "piggyback onto [Shine's] timely filed EEOC complaint" if "(1) the letter was valid and (2) the discriminatory treatment was similar and took place in the same time frame." *Stone v. First Union Corp.*, 371 F.3d 1305, 1310–11 (11th Cir. 2004). But the single-filing rule applies only "to those plaintiffs who allege discriminatory treatment within 180 or 300 days before the representative charge is filed." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1220 (11th Cir. 2001). And for a "[d]iscrete act[]" such as "failure to promote," Thomas may rely on it for his discrimination claim only if it "'occurred' within the appropriate time period." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 114.

Alabama is a non-deferral state, so Thomas had to file his EEOC charge within 180 days of UAB's decision. *See Jones v. Dillard's, Inc.*, 331 F.3d 1259, 1263 (11th Cir. 2003). But Thomas's claim based on the 2016 Communication Engineer III decision falls outside the temporal scope of Shine's 2018 EEOC charge. So Thomas's cannot reply on Shine's 2018 charge, making Thomas's claim procedurally barred.

2. <u>Merits</u>: Thomas cannot make a summary judgment showing of intentional discrimination based on the 2016 Communication Engineer III decision, either under

*McDonnell Douglas* or the convincing mosaic framework.

First, *McDonnell Douglas*. Assuming that Thomas could meet his Step 1 burden of presenting a prima facie case, he cannot meet his Step 3 burden of proving pretext for discrimination. UAB provided a legitimate, nondiscriminatory reason for hiring Otis Perkins over Thomas—*i.e.*, Perkins was "the best qualified candidate and performed the best during the interview as compared to Weaver and Thomas." (Doc. 66-15 at 2–3; *see also* Doc. 67 at 8).

Thomas makes no effort to explain how UAB's nondiscriminatory reason is pretextual. Thomas "cannot prove pretext by simply arguing or even by showing that he was better qualified than the [person] who received the position he coveted." *Springer v. Convergys Customer Mgmt. Grp., Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007). To show pretext, the "plaintiff must show that the disparities between the successful applicant's and his own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Id.* at 1349 (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457–58 (2004)). But Thomas has not (and cannot) make that showing based on the evidence here. So he cannot satisfy the *McDonnell-Douglas* framework.

15

Nor has Thomas presented "a 'convincing mosaic' of circumstantial evidence that warrants an inference of intentional discrimination." *Lewis*, 918 F.3d at 1220 n.6. Even if Thomas were qualified for this position (he does not explain how he was qualified), it is not intentional discrimination to select someone else. There is no record evidence to suggest that Thomas's race played any role in his non-selection. And Thomas makes no effort to explain otherwise.

For these reasons, this promotion decision does not get Thomas past summary-judgment either.

### 3.    2016 Communication Analyst Manager

Thomas's reliance on the 2016 Communication Analyst Manager decision fails for the same two reasons: it is time-barred and meritless.

1. Timliness: UAB's decision to hire someone other than Thomas for this position occurred more than 180 days before Shine filed his 2018 EEOC charge. It therefore falls outside the temporal scope of Shine's charge, and Thomas's reliance on this event is procedurally barred. *See Hipp*, 252 F.3d at 1220.

2. Merits: Thomas cannot make a summary-judgment showing of intentional discrimination for this promotion decision, either.

First, Thomas cannot satisfy the *McDonnell-Douglas* framework because, even if Thomas could make a prima facie case in Step 1, he did not make a summary-

judgment showing of pretext in Step 3. UAB offered legitimate, nondiscriminatory reasons for its decision to select Jennifer Dodson for this position—*i.e.*, her interview performance, prior work as an analyst and engineer, and her prior work supervising other analysts when she worked as a Coordinator of Telecommunication Services. (Docs. 66-15 at 3 ¶ 4, 67 at 6 ¶ 16). By contrast, UAB says that Thomas performed poorly during his interview, lacked recent experience as an analyst, and lacked any experience as an engineer. (Docs. 66-15 at 3 ¶ 4, 67 at 6 ¶ 17).

Even if Thomas were qualified (which he said he was, Doc. 66-5 at 16–17), Thomas has not shown or explained how he was so much more qualified than Dodson "that no reasonable person, in the exercise of impartial judgment, could have chosen [Dodson]." *Springer*, 509 F.3d at 1349. He therefore cannot satisfy the *McDonnell-Douglas* framework.

Thomas has not presented a "convincing mosaic," either. *Lewis*, 918 F.3d at 1220 n.6. Thomas's subjective belief that he was more qualified does not make it discrimination to select another qualified applicant. And Thomas made no effort to explain how race played any role in the decision.

For these reasons, Thomas's reliance on this decision does not survive summary-judgment.

### 4.   2012 Communication Analyst Manager

Finally, Thomas's reliance on UAB's failure to promote him to Communication Analyst Manager in 2012 fails because it is time barred. This decision falls outside the scope of Shine's 2018 EEOC charge. It is thus procedurally barred. *See Hipp*, 252 F.3d at 1220.

\* \* \*

In summary, none of the four promotion decisions permit Thomas's promotion-discrimination claim to survive summary judgment because each is time barred, meritless, or both. As for Thomas's other arguments, Thomas has not explained how UAB's use of an interview panel, which he claims was unfair and discriminatory (doc. 66-5 at 20; *id.* at 24–27), constitutes evidence of intentional discrimination. And that Thomas became discouraged by his inability to obtain these promotions does not amount to intentional discrimination. Thomas has simply offered no evidence that his race played a role in his inability to obtain a promotion at UAB. As a result, the summary-judgment record cannot support a finding that UAB intentionally discriminated against Thomas on account of his race in the context of promotions.

### III.    Disparate Impact

Thomas's other claim is disparate-impact discrimination. But this claim fails for the same reasons that it failed for Michael Shine. The Court incorporates and adopts its disparate-impact analysis in Shine's summary-judgment opinion. (Doc. 85 at 24–28).

* * *

For the reasons above, the Court **DENIES AS MOOT** UAB's motion to strike (doc. 76) and will enter a separate order that **GRANTS** UAB's motion for summary judgment on Thomas's claims (doc. 65).

**DONE** on **December 30, 2021.**

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE

19